

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

FILED

MAR – 8 2016

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

)
PESCHKE MAP TECHNOLOGIES LLC,                    )
)
*Plaintiff,*                     )
)
v.                                       )       Civil Action No. 1:15-cv-1366
)
PENNSYLVANIA REAL ESTATE INVESTMENT              )
TRUST,                                           )
)
*Defendant.*                    )
_____ )

### MEMORANDUM OPINION

This matter comes before the Court on a Motion to Dismiss filed by Defendant

Pennsylvania Real Estate Investment Trust ("PREIT").  Plaintiff Peschke Map Technologies

LLC ("Peschke") filed a Complaint against PREIT on October 20, 2015, claiming patent

infringement.[1]  PREIT, in turn, filed the current Motion to Dismiss, arguing that the Plaintiff's

Patent is invalid.

For the reasons outlined below, the Court finds good cause to grant the Motion to

Dismiss.  Plaintiff's Patent is not valid.  Because PREIT cannot infringe on an invalid patent, it is

appropriate for the Court to dismiss the Complaint at this time.

### I. Background

Plaintiff holds the rights to United States Patent No. 6,397,143 (the "'143 Patent"), which

was invented by George Peschke in the late 1990s. Mr. Peschke filed his patent application on

October 26, 2000.  The PTO issued the '143 Patent on May 28, 2002.  The Patent contains 19

claims, two of which—Claims 1 and 17—are independent.

---

[1] Plaintiff filed an almost identical Complaint against Rouse Properties, Inc. 1:15-cv-1365.  The Defendants in both cases filed almost identical motions to dismiss.  The Court heard these motions together at the March 4, 2016, hearing.

The invention covered by the '143 Patent is a "computer based" "map navigation and display system" that is "used to assist users in locating stores and businesses" through "the visual presentation of a shopping center showing the layout of the buildings and stores." '143 Pat col. 1:6-9; abstract. The basic iteration of the system is a map of a shopping mall that displays the location and shape of all of the different stores in the mall. Each store functions as a link that, when clicked on, takes the user to a "description page" containing information about that particular store. The system might also contain several levels of maps that permit a user to zoom in to and out of the shopping mall from a larger region or neighborhood. This system is designed to give consumers access to information about different stores using the physical layout of a mall as opposed to, for example, navigating through a list of the names of the stores at a mall.

The Defendant allegedly owns a website for a shopping mall that uses this type of computerized mapping system. Specifically, Plaintiff says PREIT is infringing on the '143 Patent through its webpage <http://shoppatrickhenrymall.com/directory>, which contains a map of the Patrick Henry Mall located in Newport News, Virginia.

## II. Legal Standard

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes; therefore a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir . 2011)). However, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a

2

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550

(2007).  Further, a motion to dismiss pursuant to Rule 12(b)(6) must be considered in

combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  When the complaint asserts patent

infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice.

The requirement ensures that the accused infringer has sufficient knowledge of the facts alleged

to enable it to answer the complaint and defend itself." *Phonometrics, Inc. v. Hospitality*

*Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000).

### III. Discussion

Defendant argues that the Complaint must be dismissed because the '143 Patent is

invalid.  More specifically, Defendant asserts that the '143 Patent is directed at a patent-

ineligible abstract idea.  Plaintiff, in response, contends that these arguments are not properly

raised at the 12(b)(6) stage and that the '143 Patent is valid.  The Court addresses each argument

in turn.

#### A. Whether These Arguments Are Properly Raised in a Motion to Dismiss

First, Plaintiff contends that Defendant's Motion to Dismiss is premature because the

Court has not yet construed any of the claims in the '143 Patent.  As a general matter, "patent

eligibility under section 101 is a question of law, [and] the Court can resolve such issue on the

pleadings, if the eligibility of the subject matter of the patents-in-suit does not involve an

underlying factual dispute." *CertusView Techs., LLC v. S & N Locating Servs., LLC*, 111 F.

Supp. 3d 688, 704 (E.D. Va. 2015).  The Federal Circuit has made clear that there is no "bright

line rule requiring district courts to construe claims before determining subject matter

eligibility." *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1325 (Fed. Cir. 2011) *cert.*

*granted, judgment vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 132 S. Ct. 2431, 182 L. Ed. 2d 1059 (2012).[2]  The Federal Circuit explained that "because eligibility is a 'coarse' gauge of the suitability of broad subject matter categories for patent protection, claim construction may not always be necessary for a § 101 analysis." *Id.* (citations omitted).  As Defendant points out, many courts have decided § 101 eligibility prior to claim construction. *See, e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 805 (E.D. Va. 2015) ("[A]ll of the claims in the '295 patent are invalid, and defendants' consolidated motion to dismiss is granted in these respects."); *see also OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015).  For example, the Supreme Court found the patent at issue in *Bilski v. Kappos* was aimed at patent-ineligible subject matter before claim construction had occurred.  130 S.Ct. 3218, 3231 (2010).  Nevertheless, this Court acknowledges that "it will ordinarily be desirable— and often necessary—to resolve claim construction disputes prior to a § 101 analysis." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).  This is because claim construction may "clarify the basic character of the subject matter of the invention," and may resolve "questions about subject matter abstractness." *Ultramercial,* 657 F.3d at 1325.

After a thorough review of the '143 Patent, the Court concludes that the claimed subject matter is readily ascertainable from the face of the '143 Patent.  The claims in the '143 Patent describe a "[m]ethod of presenting and providing navigation through a series of maps." '143 Patent, col. 7:17-18; col. 8:44-45.  The invention includes at least three levels of maps.  Claim 1 provides for a first level map that depicts several store layouts. *Id.* col. 7:20-21.  For each store layout depicted on the first level map, there is a corresponding "description page." *Id.* 22-23.

---

[2] "Although *Ultramercial* has since been vacated by the Supreme Court," the Federal Circuit has reaffirmed its conclusion that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

The invention also provides for a link for each store layout that, when activated, causes the "description page to be displayed." *Id.* 25-28.

The '143 Patent next provides for a second level map that "depict[s] a larger physical area than said first level map" and encompasses the area depicted in the first level map. *Id.* col. 7:29-35. The invention includes a "link from said second level map to said first level map." *Id.* The Patent provides for several second level maps and "navigation symbols" that allow a user to move from one second level map to the next. *Id.* 42-50. The navigation symbols correspond to different physical directions. *Id.* "[A]ctivating one of said navigational symbols causes the display of the nearest of said second level maps depicting an area in that relative direction." *Id.* The Patent also provides that where the first level map represents the location and shape of a store within a shopping center, the second level map represents the shape of the shopping center in which that store is located. *Id.* 57-61. The second level map also "represents the location of said shopping center within a neighborhood." *Id.* 62-65.

The '143 Patent next provides for a "third level map" which "depict[s] a larger physical area than said second level map," and encompasses the area covered by the second level map. *Id.* col. 8: 4-9. The Patent provides for a link between the second and third level map. *Id.* The third level map also depicts the layout of the shopping centers on the encompassed second level maps and their relative location within a neighborhood. *Id.* 19-23; 32-36. The third level map also "represents the location of said neighborhood within a region." *Id.* 24-31.

In addition to map levels, the Patent describes the use of "symbolic icons" and "text based search." The "symbolic icons provid[e] a non-textual indication of the type of business conducted by" a particular store. *Id.* 1-3. The text based search allows a user to search for a

store by a selected "characteristic." *Id.* 37-44. A user can search by "address, business name, business type, street name, town name, service provides, and goods sold." *Id.*

Claim 17, the second independent claim, reiterates the method of navigating through a series of maps depicting store layouts located with shopping centers and providing description pages for each store. *Id.* col. 8:46-col. 10:5. Claim 17 also provides for neighborhood maps and regional maps of increasing geographic area linked together to enable a user to zoom in from a larger area to a smaller area. *Id.*

As a whole, the invention seeks to assist a user in locating "a particular store through the use of location and layout information," particularly where the address or name of a store is unknown. *Id.* col. 2: 31-39. In addition to helping a user to find a store based on location, the invention provides information about that store to the user "to allow the store to be contacted or visited." *Id.* All of this is readily ascertainable from the face of the '143 Patent and is not contested by the parties. Further, nearly all of the technical terms used in the '143 Patent—including click, layout, link, hyperlink, neighborhood, region, shopping center, and store—have been defined in the glossary section.

Nevertheless, Plaintiff argues that claim construction is necessary to determine the scope of the claims in the '143 Patent prior to the § 101 analysis. Plaintiff cites just one term—"description page"—that it argues needs to be defined before the validity of the Patent can be determined. The Court does not find this persuasive. It is true that "description page" is not specifically defined in the glossary section of the '143 Patent. However, the Patent does describe providing users with "detailed information about a particular store or business such as name, address, telephone numbers, hours of operation, etc." *Id.* col. 2:1-3. Further, and most importantly, Plaintiff has not indicated how defining "description page" in a claim construction

hearing would clarify the subject matter of the invention or change the Court's analysis in any way.

Plaintiff also argues that this Court must conduct claim construction before analyzing the patent under § 101 because the U.S. District Court for the Eastern District of Delaware, in a separate action, "found claim construction was necessary to understand the scope and meaning of the claim terms" in the '143 Patent. Pl. Memo. Opp. at 4. The Court also does not find this argument persuasive. It is true that the District of Delaware conducted claim construction for the '143 Patent. *Peschke Map Techs. LLC v. J.J. Gumberg et al.*, 1:12-cv-1525, Dkt. 81 (D. Del. June 3, 2014). However, that Court did not conclude that claim construction was necessary specifically for it to conduct a § 101 analysis. *Id.* It does not appear that the parties ever contested the validity of the '143 Patent in that case. The Court thus declines to read this conclusion into the District of Delaware's order.

As described above, the character of the '143 Patent is readily ascertainable from the face of the Patent. Plaintiff has identified just one term that it argues needs to be defined to understand the scope of the Patent. The Court does not find it necessary to define this term in a claim construction hearing to conduct a validity analysis of the '143 Patent under § 101. Accordingly, the Court concludes this Motion to Dismiss is not premature.

*B. Whether the Claims of the '143 Patent Are Invalid Under 35 U.S.C. § 101*

"Section 101 of the Patent Act defines the subject matter eligible for patent protection." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). This section provides that an individual who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court

has long held that there are several important exceptions to this provision; that is, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013) (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.Ct. 1289, 1293 (2012)). However, considering the reality that laws of nature, natural phenomena, and abstract ideas are "the basic tools of scientific and technological work," the Supreme Court has also expressed concern that these exceptions would "swallow all of patent law." *Alice*, 134 S. Ct. at 2354 (internal quotations and citations omitted).

With this concern in mind, in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.Ct. 1289 (2012), the Supreme Court "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2354. First, a court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* If the patent is directed at a law of nature, natural phenomena, or abstract idea, the court must consider whether the claims contain an "inventive concept" that "transform the nature of the claim" into patent-eligible subject matter. *Mayo*, 132 S.Ct., at 1297-98.

Defendant argues that Plaintiff's patent is directed at a patent-ineligible abstract idea. The Court, therefore, must first determine whether the claims in the '143 Patent are directed at an abstract idea. If so, the Court then must determine whether the claims contain a transformative inventive concept that transforms the abstract idea into a patent-eligible subject matter.

(1) Whether the Claims in the '143 Patent are Directed to an Abstract Idea

The Supreme Court has not precisely defined the outer limits of what constitutes an abstract idea, however, the Court has provided some concrete guidance. "The 'abstract ideas'

category embodies the longstanding rule that an idea of itself is not patentable." *Alice*, 134 S. Ct. at 2355 (citations and quotations omitted). Following this principal, the Supreme Court has held that "mathematical algorithms, including those executed on a generic computer, are abstract ideas." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (citing *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972)). In addition, "longstanding commercial practices," fundamental economic procedures, and other "well-understood, routine conventional activities," are considered abstract ideas. *Id.*; *Alice*, 134 S. Ct. at 2356; *Bilski v. Kappos*, 1561 U.S. 593 (2010); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015). Further, "tying an abstract idea to a general purpose computer or to the Internet, without more, is generally insufficient to make an abstract idea patentable." *In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 783 (E.D. Va. 2015) (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715-17 (Fed. Cir. 2014).

As described above, the '143 Patent describes an electronic map navigation system that enables a user to "locate a particular store through the use of location and layout information" and that provides a link to a description page containing information about the store. '143 Patent, col. 2:31-39. The claims also describe the ability to zoom in and out of larger or smaller geographic areas depicted on these maps. *Id.* 13-19; 35-36. The Court agrees with Defendant that these are "well-understood, routine, conventional activit[ies]." *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1291 (2012). For example, maps of cities have long existed that depict structures and include identifying marks that direct a user to information about those structures. The Court finds Defendant's demonstrative map depicting the City of Alexandria telling. Def. Ex. B. The 1798 map titled "Town of Alexandria" depicts the layout of Alexandria and identifies the location of several structures, which have been labeled with

numbers. The "Remarks" section of the map identifies the building that corresponds to each
number. Like the invention covered by the '143 Patent, an individual using the Alexandria map
can locate a particular building "though the use of location and layout information even if the
address or even street is unknown." '143 Pat. col. 2:31-33. This map achieves the same result as
the invention described in the '143 Patent. The only difference is that the process described in
the '143 Patent occurs on a computer and uses hyperlinks that cause a description page to appear
instead of using markers that direct a user to an index or legend.

  The Plaintiff makes much out of the fact that their invention is a "non-text based system"
that does not require, for example, the numbers used on the Alexandria map to provide a user
with information about a particular store. The Court finds this fact inapposite. The numbers
perform the same function as the hyperlinks in the '143 Patent in that they directs users to
information about the buildings. Further, the use of numbers does not change the reality that
both map systems present "information by physical layout and shape and by relation to
geographic landmarks." *Id.* col. 1:6-10.

  The Court also finds the use of multiple layers of maps that enables users to zoom into
and out of a geographic area is an unpatentable abstract idea. First, the '143 Patent admits that
the ability to zoom in and out is a well-known technique. *Id.* col. 4:2-6 (Existing methods
emphasize the use of street names and/or addresses for navigation possibly combined with the
ability to zoom in and out of the current screen."). Second, atlases have long provided maps of
large geographic areas along with corresponding maps of smaller portions of these larger maps
that contain more detail. This system thus simply ties a long-standing practice to a general
purpose computer. As the case law indicates, such an invention is an unpatentable abstract idea.
*See In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 783 (E.D. Va. 2015).

The dependent claims also do not change the nature of the '143 Patent. The dependent
Claims (Claims 2-16 and 18-19) merely describe other conventional electronic map navigation
features such as panning, using symbolic icons, and text based searching. None of these features
add anything to the '143 Patent to take it outside of the abstract idea realm.

Finally, Plaintiff insists that the Claims in the '143 Patent are analogous to the claims in
*DDR Holdings, LLC v. Hotels.com, L.P.*, which were upheld as valid by the Federal Circuit. 773
F.3d 1245 (Fed. Cir. 2014). The Patent at issue in *DDR Holdings* addressed the problem of
retaining website visitors. *Id.* at 11248. The system covered by the DDR patent was described
as follows:

> On activation of a hyperlink on a host website—such as an advertisement for a
> third-party merchant—instead of taking the visitor to the merchant's website, the
> system generates and directs the visitor to a composite web page that displays
> product information from the third-party merchant, but retains the host website's
> 'look and feel.' Thus, the host website can display a third-party merchant's
> products, but retain its visitor traffic by displaying this product information from
> within a generated web page that 'gives the viewer of the page the impression that
> she is viewing pages served by the host' website.

*Id.* (citations omitted). The Federal Circuit held that the claims in the DDR patent stood apart
from the other patents that the Federal Circuit and the Supreme Court had recently held invalid
"because they did not merely recite the performance of some business practice known from the
pre-Internet world along with the requirement to perform it on the Internet." *Id.* at 1257. Rather,
the claims were "necessarily rooted in computer technology in order to overcome a problem
specifically arising in the realm of computer networks." 773 F.3d 1245, 1257 (Fed. Cir. 2014).
Plaintiff argues that its claims are also directed towards solving a problem that exists specifically
within the realm of computers and, accordingly, that the claims should be found valid.

The Court does not agree that the '143 Patent addresses a challenge particular to
computers or the Internet. Rather, the '143 Patent addresses a problem "known from the pre-

11

Internet world": navigating through maps and locating information about structures appearing on those maps. Thus, the Court cannot analogize the claims in this case to those at issue in *DDR Holdings*.

For all of the reasons set forth above, the Court finds that the '143 Patent is directed at an abstract idea. With this settled, the Court turns to the second step of the § 101 analysis.

<u>(2) Whether the Claims in the '143 Patent Contain an Inventive Concept</u>

Step two of the § 101 analysis is a search for an "inventive concept." In this step, the Court looks for "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citations and brackets omitted). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* (citing *Mayo*, 132 S.Ct. at 1297. To qualify as an inventive concept, the claims "must do more than simply state the [abstract idea] while adding the words 'apply it.'" *Mayo*, 132 S.Ct. at 1294. Further, "[t]hose additional features must be more than 'well-understood, routine, conventional activity.'" *MicroStrategy Inc. v. Apttus Corp.*, __ F. Supp. 3d __, 2015 WL 4425828, at *2 (E.D. Va. July 17, 2015).

*Gottschalk v. Benson* is instructive here. 409 U.S. 63 (1972). In *Benson*, the Supreme Court considered a patent that claimed an algorithm implemented on "a general-purpose digital computer." *Id.* at 64. The Court first found the algorithm was an abstract idea and then considered whether the patent applied the abstract idea in a "new and useful" way that would make it patent eligible. *Id.* at 67. The patent described implementing the algorithm on a general use computer that had long been in use. *Id.* The Court found that "simply implementing a

mathematical principle on a physical machine, namely a computer, was not a patentable application of that principle." *Mayo*, 132 S. Ct. at 1301 (citing *Benson* 409 U.S. at 71).

In contrast, in *Diamond v. Diehr*, 450 U.S. 175 (1981), the Supreme Court held that a computer-implemented process for curing rubber was patent eligible. The patent claim described a "well-known" mathematical equation and utilized a computer, but it used that equation in a new way to solve a technological problem in the process of rubber molding. *Id.* at 177, 178. This application made the otherwise abstract idea patentable. *Id.* The invention in *Diehr* used a "thermocouple" to record constant temperature measurements inside a rubber mold; up until this point, the industry had not been able to obtain these measurements. *Id.* at 178. The temperature measurements were then processed in a computer, which constantly calculated the amount of time the rubber in the mold needed to cure based on the temperature using the mathematical equation. *Id.* at 178-79. The *Diehr* Court concluded that "the claims in *Diehr* were patent eligible because they improved an existing technological process," namely curing rubber, "not because they were implemented on a computer." *Alice*, 134 S. Ct. at 2358.

This case is much closer to *Benson* than *Diehr*. After a review of the patent, the Court must conclude that the claims do nothing more than describe an abstract idea with the instruction to "apply it" on a computer, as in *Benson*. As the Supreme Court has made clear, "[g]iven the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]'" that makes an abstract idea patentable. *Alice*, 134 S. Ct. at 2358 (citations omitted). Unlike in *Diehr*, the '143 Patent does not apply the abstract idea, using a computer, to a new technological process or in an otherwise new way to solve a unique problem.

Plaintiff argues that the '143 Patent's "inventive concept" is the improvement of computerized mapping through the use of layers and linking. Specifically, the Plaintiff points to

13

the Patent's requirement that hyperlinked icons be overlaid on a background map in the shape of the different stores as a new and inventive concept. Plaintiff insists that when the computerized mapping system was invented it was not commonplace to use an object overlaid on a map as a hyperlink to an information page. The Court declines to find that using a hyperlinked icon in the shape of a store overlaid on a map to be an inventive concept. This is simply the computerization of the well-known practice, explained extensively above, of using a map that depicts the shapes of stores as seen from above to provide the map user with information about those different stores. The Plaintiff concedes that electronic maps, hyperlinks, and the use of servers and databases to provide information were widely used when the system was invented. The '143 Patent merely describes the use of these widely-used and well-understood tools to implement the abstract idea on a computer. This application of the abstract idea does not make the computerized mapping system patent-eligible.

As the '143 Patent has failed both steps of the patentability test set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.Ct. 1289 (2012) and *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), the Court must conclude that the '143 Patent is invalid.

### IV. Conclusion

As explained above, the invention described in the '143 Patent is not patentable. The invention does not pass the two part test laid out by the Supreme Court in *Mayo* and *Alice*. First, the '143 Patent describes an abstract idea. Second, the '143 Patent does not contain an inventive concept that would make the abstract idea patent-eligible. Finally, because the subject matter of the Claims is readily ascertainable from the face of the '143 Patent, claim construction is not necessary for the Court to consider the validity of the Patent. Accordingly, in this case, the § 101

analysis is properly conducted at the 12(b)(6) stage.  Because the '143 Patent is invalid, the

Court finds good cause to GRANT the Motion to Dismiss.

An appropriate Order will issue.

March 8, 2016
Alexandria, VA

/s/
Liam O'Grady
United States District Judge

15